UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 11-cv-4709 (JFB) (GRB)
_____

CHRISTINA BAFFA,

Plaintiff,

VERSUS

STAT HEALTH IMMEDIATE MEDICAL CARE, P.C.,

Defendant.

_____

**MEMORANDUM AND ORDER**
September 17, 2013
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Christina Baffa ("Baffa" or "plaintiff") commenced this action against Stat Health Immediate Medical Care, P.C. ("STAT Health" or "defendant") alleging that defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and Article 15 of the Executive Law of the State of New York § 296. Plaintiff alleges that she was the subject of gender discrimination when she was terminated from her employment as a probationary medical receptionist in September 2010. Specifically, plaintiff contends that she was terminated because she was pregnant. Defendant contends that its decision to terminate plaintiff was not based upon any discriminatory motive, but rather was based upon the conclusion of plaintiff's three-month period as a probationary employee, as well as plaintiff's misconduct and unsatisfactory performance as an employee.

Defendant now moves for summary judgment on all claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants defendant's motion in its entirety with respect to the federal claim, and declines to exercise supplemental jurisdiction over the state law claim. In essence, plaintiff relies on temporal proximity between the announcement of her pregnancy in mid-August 2010 and her termination on September 24, 2010 as the sole evidence for her discrimination claim. As a threshold matter, there is other evidence in the record that explains the timing of the termination – namely, plaintiff was a 90-day probationary employee who was hired on June 19, 2010 and, thus, her termination coincided with the end of her probationary period. In any event, defendant has articulated a non-

discriminatory reason for her discharge – that is, poor performance – and temporal proximity alone is insufficient to demonstrate pretext. In connection with the non-discriminatory reason for termination, it is uncontroverted that nine employees (excluding supervisors) submitted affidavits to this Court regarding plaintiff's poor job performance and stating that they and/or other employees complained to management about plaintiff. Although plaintiff disputes that her performance was poor, she does not dispute that these complaints were made or that these employees lacked discriminatory animus. Moreover, it is undisputed that (1) even prior to learning about her pregnancy, the staff at STAT Health was critical of plaintiff's performance, and (2) shortly before plaintiff's termination, one of STAT Health's medical billers documented in an email that plaintiff incorrectly entered patient information. In the face of this overwhelming, uncontroverted evidence of complaints about her poor performance, plaintiff has no evidence from which a rational jury could conclude that the articulated reason for her termination was a pretext for gender discrimination based upon pregnancy. To the extent that plaintiff attempts to rely upon two facts, namely, that she was terminated on the same day that she had to excuse herself on two or three occasions because of morning sickness, and that her supervisor allegedly said at the time of termination that plaintiff should not worry about the termination because she would be having her baby soon and have many things to look forward to, the events of that day cannot possibly allow a rational jury to conclude that plaintiff's pregnancy was a motivating factor in the termination. First, there is no evidence that the supervisor knew of the morning sickness earlier that day and, as noted above, the timing of the termination coincided with the end of plaintiff's probationary period and a recent email from a medical biller about errors by plaintiff. Second, the alleged comment is innocuous and has no probative value as to discriminatory intent in light of the entire record. The lack of evidence of gender discrimination based on the pregnancy is further demonstrated by the uncontroverted evidence that: (1) defendant employed two pregnant employees in 2010 who suffered no adverse treatment (including one employee who has been pregnant three times while employed at STAT Health); (2) defendant permitted two grandmothers to take leave in 2010 to help care for their grandchildren; and (3) plaintiff's eventual replacement was pregnant at the time she was hired. In short, even construing the facts most favorably to plaintiff, no rational jury could possibly conclude, in light of the uncontroverted evidence in the record, that plaintiff was terminated based upon her gender as a result of her pregnancy.

I. BACKGROUND

A. Factual Background

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the parties' respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50-51 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any evidence in the record to contradict it.[1]

---

[1] In addition, although the parties' Rule 56.1 statements contain specific citations to the record to support their statements, the Court cites to the Rule 56.1 statements, rather than to the underlying citations to the record.

### 1. Plaintiff's Job Performance

STAT Health is an immediate care medical practice facility (often referred to as an urgent care facility) with locations in Smithtown, New York and Port Jefferson, New York. (Def.'s 56.1 ¶¶ 1-2.) On approximately June 19, 2010, STAT Health hired plaintiff as a part-time medical receptionist. (*Id.* ¶¶ 20, 24; *see also* Decl. of Sharon Stiller ("Stiller Decl.") Ex. A, Dep. of Christina Baffa ("Baffa Dep."), at 41.) Plaintiff had no prior experience as a medical receptionist. (Def.'s 56.1 ¶ 23.) Plaintiff was told that she would be a probationary employee for the first three months of her employment and that she would be reviewed at the end of her probationary period. (Baffa Dep. at 67-68.)

Susan Dougherty ("Dougherty") was the office administrator at STAT Health during plaintiff's employment and made decisions regarding the hiring and firing of receptionists. (Aff. of Susan Dougherty ("Dougherty Aff.") ¶¶ 1, 5.) Dinah Hamilton ("Hamilton") was the Medical Assistant Manager. (Aff. of Dinah Hamilton ("Hamilton Aff.") ¶ 1.) Although defendant states that Hamilton did not have hiring and firing authority over receptionists (Def.'s 56.1 ¶ 14), Hamilton stated at her deposition that she is involved in interviewing and disciplining employees (Stiller Decl. Ex. C, Dep. of Dinah Hamilton ("Hamilton Dep.") at 39). In any event, it is undisputed that Hamilton worked closely with the receptionists on a daily basis. (Hamilton Aff. ¶¶ 3, 5.)

According to employees of STAT Health, from the beginning of her employment, plaintiff made numerous errors regarding inputting patient information and other data as part of the "registration" duties of a receptionist. (*See* Dougherty Aff. ¶ 10 ("From the inception, Ms. Baffa performed her job duties poorly."); Hamilton Aff. ¶ 9 ("I heard numerous staff members complain that Ms. Baffa was lazy, not performing her work and that she continuously made errors in inputting the patient and insurance information."); Aff. of Isaiah Rhem Bennett ("Bennett Aff.") ¶ 3 ("From the time that she was hired until she was terminated, Ms. Baffa continued to make registration errors, which I caught as a medical biller. For example, she would fail to enter the full insurance identification number, so that the reimbursement request would be denied.").) Plaintiff disputes that this occurred, stating that she "rarely made mistakes while performing the registration function." (Decl. of Edward L. Sample, II ("Sample Decl.") Ex. A, Aff. of Christina Baffa ("Baffa Aff.") ¶ 34.) In addition, plaintiff contends that "inputting errors were common amongst the receptionists." (*Id.* ¶ 35.) However, Dougherty states that most receptionists did not make mistakes often, and that the errors that plaintiff made should never have occurred. (Stiller Decl. Ex. B, Dep. of Susan Dougherty ("Dougherty Dep.") at 126-27; *see also* Aff. of Danielle Markert ("Markert Aff.") ¶ 6 ("We expect and most receptionists are able to correctly and accurately perform the registration functions within one to two months of hire.").) Dougherty noted that, because plaintiff did not adequately perform her registration functions as a receptionist, she was never trained on discharge duties even though receptionists commonly learn this during their probationary period. (Dougherty Aff. ¶ 11.)

In July 2010, before plaintiff learned she was pregnant, Hamilton reminded plaintiff that it was necessary for her to answer the phone by the second ring. (Baffa Dep. at 90.) In fact, plaintiff admitted that, prior to learning about her pregnancy, "staff at STAT Health were critical of [her] performance." (*Id.*)

3

Plaintiff states that, on approximately August 15, 2010, she learned she was pregnant and immediately notified defendant, including Dougherty and Hamilton, as well as several receptionists. (Baffa Aff. ¶¶ 11-12.)[2]

After plaintiff learned she was pregnant, plaintiff received warnings regarding more serious misconduct. Dougherty states that ,on August 30, 2010, she "heard Ms. Baffa reveal patient information within earshot of a crowded waiting room." (Dougherty Aff. ¶ 20; *see also* Def.'s 56.1 ¶ 39.) Although this account differs from the employee disciplinary notice Dougherty wrote on August 30 – which states that a patient overheard plaintiff complain about another patient (*see* Dougherty Aff. Ex. 5) – plaintiff admitted at her deposition that she received a verbal warning from Dougherty regarding patient confidentiality (Baffa Dep. at 91-93). Plaintiff disputes that she disclosed any confidential information and claims that other receptionists committed this misconduct. (Baffa Aff. ¶¶ 23-25.)

In August 2010, Hamilton received a phone call from a staff member at STAT Health's Port Jefferson office where plaintiff was working that day. According to Hamilton, the staff member complained that plaintiff was not doing her work. As a result, Hamilton called plaintiff and "told her to get back to work." (Hamilton Aff. ¶ 8.) Plaintiff states that Hamilton yelled at her and sent her home from work, despite plaintiff's explanation that she had just arrived and was completing her tasks. (Baffa Dep. at 43-44, 51-52; *see also* Baffa Aff. ¶ 21.)

Plaintiff also states that, on August 31, 2010, she was discharged from work early for sitting in the office kitchen and texting, even though she has never texted on her phone during working hours and did not even "own a phone with texting capability" at that time. (Baffa Aff. ¶ 26.)[3]

At the end of plaintiff's probationary period, Dougherty received two e-mails from Isaiah Rhem Bennett ("Bennett"), one of STAT Health's medical billers. The e-mails documented plaintiff incorrectly entering patient information. (Dougherty Aff. ¶ 24; *see also* Bennett Aff. Ex. 1 (e-mails from Bennett to plaintiff, cc'ing Dougherty, documenting these alleged errors).) Dougherty states that the mistakes were "serious" because one error resulted in a "costly delay in billing," and the other resulted in an entire patient chart having to "be deleted and reentered." (Dougherty Aff. ¶ 25.) Bennett elaborates that this latter mistake "would be dangerous for the patient" if it was not noticed because "no one would have been able to locate the chart." (Bennett Aff. ¶ 12.)[4]

As well as these specific incidents, defendant submitted affidavits from

---

[2] Dougherty and Hamilton both state that they did not learn that plaintiff was pregnant until September 24, 2010, the date of her discharge. (Dougherty Aff. ¶ 32; Hamilton Aff. ¶ 11.) However, this dispute is immaterial to the Court's decision because, as discussed *infra*, plaintiff's federal claim cannot survive summary judgment even if the decisionmakers were aware of her pregnancy in mid-August.

[3] At her deposition, Hamilton stated that "it looked like she was texting, but maybe I misunderstood it. Either way she was definitely sitting in the kitchen on her phone. Whether she was doing something else on it, I have no idea." (Hamilton Dep. at 86.)

[4] Plaintiff emphasizes that she did not receive the e-mails notifying her of these mistakes because, although they were addressed to her, she had changed her e-mail address and told defendant of that change. (*See* Pl.'s 56.1 ¶ 48.) In any event, whether plaintiff was notified of her errors prior to her termination is irrelevant for purposes of defendant's motion because no rational juror could conclude that defendant's failure to properly notify plaintiff of her errors is indicative of discriminatory animus.

4

numerous employees other than Hamilton and Dougherty indicating that plaintiff's job performance was unsatisfactory or that plaintiff committed misconduct throughout her probationary period, and that complaints were made to management about plaintiff's poor performance. (*See, e.g.*, Aff. of Rebecca Dougherty ("Rebecca Dougherty Aff.") ¶ 3 ("Ms. Baffa was lazy and very slow in performing her job duties which was a problem for the other receptionists who had to pick up the slack. I complained about her and I heard the other employees complaining about her failure to do her work, as well as the mistakes that she made."); Aff. of Melissa Demetres ("Demetres Aff.") ¶ 3 ("I observed Ms. Baffa shy away from doing work. In fact, I reported this to the management at STAT Health, because this meant that others had to do her work."); *id.* ¶ 4 ("Ms. Baffa also frequently discussed confidential patient information in front of other patients. I recall that one patient called and complained because the patient had heard her say something about another patient."); Aff. of Jessica McIntyre ("McIntyre Aff.") ¶ 10 ("I complained to Susan Dougherty about [plaintiff] and her lack of work ethic."); Bennett Aff. ¶ 3 ("From the time that she was hired until she was terminated, Ms. Baffa continued to make registration errors, which I caught as a medical biller. For example, she would fail to enter the full insurance identification number, so that the reimbursement request would be denied."); *id.* ¶ 5 (stating that plaintiff made an "inordinate number of mistakes"); *id.* ¶ 12 (stating that some of plaintiff's mistakes were "particularly egregious"); Aff. of Brittany Alvarenga ("Alvarenga Aff.") ¶¶ 5-6 ("I complained about her job performance and I heard a large number of other employees complain about her failure to perform her job duties. . . . These performance problems continued from the time she was hired until the time she was terminated."); Markert Aff. ¶¶ 8-9 (stating that she observed plaintiff make mistakes and attempted to help her correct them but that "[n]onetheless, Ms. Baffa continued to make errors"); *id.* ¶ 9 (stating that she complained to management about plaintiff's job performance); *id.* ¶ 16 (stating that she did not know plaintiff was pregnant and that she "was not surprised that she was terminated at the end of her probationary period because despite our efforts to help her, she continued to make errors throughout her probationary period, and not perform her job duties").) Although plaintiff disputes the veracity of these statements regarding her job performance, plaintiff does not dispute that these employees complained about her or that these employees believed she was an unsatisfactory employee. Moreover, there is no allegation by plaintiff that these employees had any discriminatory animus.

2. Plaintiff's Termination

On September 24, 2010, plaintiff experienced morning sickness. (Baffa Aff. ¶ 18.) Plaintiff states that she had to excuse herself to the bathroom on two or three occasions. (*Id.*) According to plaintiff, when Hamilton asked plaintiff if she was feeling well, plaintiff told Hamilton that she was experiencing morning sickness but could continue working. (*Id.* ¶ 19.) Plaintiff asserts that Hamilton sent plaintiff home and "screamed" at plaintiff: "You have to go home! We can't have you throwing up like this! Not in front of patients! I don't want the doctors to know!" (*Id.*) Hamilton disputes this, claiming that she never said anything along these lines to plaintiff and never yelled at her. (Hamilton Aff. ¶ 12.) Hamilton states that she merely advised plaintiff to eat crackers to help with morning sickness and sent plaintiff home because the front desk could not be without coverage.

5

(*Id.*) Hamilton advised plaintiff that she could return later if she felt better. (*Id.*)

When plaintiff returned to the office, she was directed to speak to Dougherty. (Baffa Aff. ¶ 20.) According to plaintiff, Dougherty told her, "I don't think this is going to work out. Don't worry, you'll be having a baby soon. You have lots of things to look forward to. Enjoy bringing your baby in." (*Id.*) Dougherty disputes this version of the events. Dougherty claims that she was out of the office on the morning of September 24 and unaware of plaintiff's morning sickness. (Dougherty Aff. ¶¶ 29, 33.) Dougherty states that she showed plaintiff the e-mails (received just days earlier) from Bennett regarding mistaken data entry and notified plaintiff of her termination. (*Id.* ¶ 30.) Dougherty claims that plaintiff then said, "[b]ut I'm pregnant." (*Id.* ¶ 32.) Dougherty then congratulated plaintiff on her pregnancy and told her that she should bring the baby into the office. (*Id.*)

### 3. Defendant's Treatment of Pregnant Employees

Defendant has had other pregnant employees who have not been terminated. In 2010, two of STAT Health's forty employees were pregnant and neither were terminated. (Def.'s 56.1 ¶ 83.) Both were given as many weeks of maternity leave as they requested. (*Id.*) In fact, one of those employees, Charlotte Mooney, has been pregnant three times while an employee of STAT Health and has experienced morning sickness during one of those pregnancies. (*Id.* ¶¶ 85-87.) Plaintiff argues that these employees are not similarly situated because they are medical billers and not receptionists. In addition, during 2010, STAT Health permitted two grandparents to take leave to help care for their grandchildren. (*Id.* ¶ 92.)

Plaintiff's immediate replacement was not pregnant, but was also terminated for performance-related issues, (*id.* ¶ 97); that employee's replacement (plaintiff's eventual replacement) was four months pregnant at the time of hiring (*id.* ¶ 98).

### B. Procedural Background

Plaintiff filed the complaint in this action on September 27, 2011. Defendant answered the complaint on November 14, 2011. The parties engaged in discovery throughout 2012. On February 28, 2013, defendant moved for summary judgment. Plaintiff submitted her opposition on May 8, 2013, and defendant submitted its reply on May 30, 2013. The Court held oral argument on July 12, 2013. The Court has fully considered the submissions of the parties.

## II. STANDARD OF REVIEW

The standard for summary judgment is well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

### III. DISCUSSION

Defendant now moves for summary judgment, arguing that plaintiff cannot establish a *prima facie* case of gender discrimination, and in any event, defendant had a legitimate, non-discriminatory reason for its action that plaintiff cannot establish was pretextual.

A. Plaintiff's Gender Discrimination Claim[5]

1. Legal Standard

Title VII prohibits discrimination against an employee based on her gender, race, or national origin. *See* 42 U.S.C. § 2000e-2(a). The Pregnancy Discrimination Act amended Title VII's definition of gender discrimination to include disparate treatment "because of or on the basis of pregnancy, childbirth, or related medical conditions." *Id.* § 2000e(k); *see also Saks v. Franklin Covey Co.*, 316 F.3d 337, 343 (2d Cir. 2003). Here, plaintiff claims she was discriminated against by defendant on the basis of her gender when she was terminated because of her pregnancy.

The "ultimate issue" in any employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment action was motivated, at least in part, by an "impermissible reason," i.e., that there was discriminatory intent. *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997). In the absence of direct evidence of discrimination, a plaintiff in an employment discrimination case must satisfy the three step *McDonnell Douglas* test.

First, a plaintiff must establish a *prima facie* case of unlawful discrimination by showing that (1) she is a member of a protected class (2) who performed her job satisfactorily (3) but suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination (or retaliation). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 & n.13 (1973) (noting that elements of a *prima facie* case vary depending on factual circumstances); *Stratton v. Dep't for the Aging for the City of N.Y.*, 132 F.3d 869, 879 (2d Cir. 1997).

Second, if the plaintiff establishes a *prima facie* case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision." *Stratton*, 132 F.3d at 879; *see also Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142-43 (2000). "The purpose of this step is to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Stratton*, 132 F.3d at 879 (citation and internal quotation marks omitted).

Third, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993); *see also James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that a reasonable jury could conclude that more likely than not the employer's actions were motivated, at least in part, by a discriminatory reason. *See James*, 233 F.3d at 154; *Connell v. Consol.*

---

[5] In plaintiff's complaint, plaintiff also alleges that she was discriminated against when defendant reduced plaintiff's hours in September 2010 without explanation. (Compl. ¶ 15.) However, plaintiff does not advance this argument in her memorandum of law in opposition to summary judgment, nor did plaintiff's counsel make this claim at oral argument. Thus, it appears to have been abandoned. In any event, plaintiff has not introduced any evidence that her hours were reduced without explanation, and there is also no evidence that any such reduction in hours was due to discrimination. Thus, to the extent such a claim is still being asserted, it also cannot survive summary judgment.

*Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 207 (S.D.N.Y. 2000).

To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James*, 233 F.3d at 157. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell*, 109 F. Supp. 2d at 207-08.

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

2. Application

Defendant argues that plaintiff cannot establish a *prima facie* case of gender discrimination in connection with her termination because her numerous instances of misconduct were a sufficient justification for discharge, and that plaintiff was not terminated under circumstances giving rise to an inference of discrimination. For the purpose of this motion, the Court assumes that plaintiff has satisfied the minimal burden required by *McDonnell Douglas* to make out a *prima facie* case of gender discrimination.

Defendant has put forth legitimate, non-discriminatory reasons for plaintiff's termination – namely that plaintiff's performance as a receptionist was "unsatisfactory" and filled with mistakes and misconduct. (*See* Def.'s Mem. at 15.) Specifically, plaintiff committed two serious data-entry errors at the end of her probationary period, received an official reprimand for disclosing confidential patient information, numerous STAT Health employees complained about the large number of mistakes plaintiff made, employees believed that plaintiff was lazy, plaintiff was sent home for using her cell phone during working hours, and plaintiff had to be reminded about answering the phone properly.

Hence, the Court proceeds directly to the ultimate question of whether plaintiff has presented sufficient evidence from which a reasonable jury could find gender discrimination by examining each party's evidence individually and then proceeding to evaluate the evidence as a whole. *See Stern v. Trs. of Columbia Univ.*, 131 F. 3d 305, 314 (2d Cir. 1997).

a. Temporal Proximity and Plaintiff's Probationary Status

In essence, plaintiff's *only* evidence in her favor in this case is the purported temporal proximity between defendant learning of plaintiff's pregnancy and the termination. According to plaintiff, she

notified both Dougherty and Hamilton of her pregnancy on approximately August 15, 2013, just one month prior to her termination. There is also no dispute that plaintiff was fired on the same day she experienced morning sickness and was sent home by Hamilton.

"Temporal proximity between the plaintiff's termination and her pregnancy, childbirth, or related medical condition can raise an inference of discrimination." *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 128 (E.D.N.Y. 2011). For example, in *Smith v. K & F Industries, Inc.*, 190 F. Supp. 2d 643 (S.D.N.Y. 2002), the court denied the employer's motion for summary judgment when the plaintiff-employee received her first negative performance evaluations one month after she announced her pregnancy. *See id.* at 648-51. However, "[w]hile timing may be sufficient to establish an inference of discrimination, the close proximity of a termination to the plaintiff's announcement of her pregnancy alone is insufficient to demonstrate a pretext." *Forde v. Beth Israel Med. Ctr.*, 546 F. Supp. 2d 142, 152 (S.D.N.Y. 2008) (citation and internal quotation marks omitted); *see also Briggs*, 819 F. Supp. 2d at 128 ("[C]ourts have noted that an inference of discrimination arises from temporal proximity between the plaintiff's termination and the announcement of her pregnancy or her request for maternity leave only when accompanied by other circumstantial evidence."). In *Smith*, it was not simply the temporal proximity that required a denial of summary judgment, but also numerous pregnancy-related comments made by the employer combined with the lack of credibility of the employer's proffered non-discriminatory reason for termination. 190 F. Supp. 2d at 648-51.

As a threshold matter, there is strong, uncontroverted evidence proffered by defendant as to the reason for the timing of the termination that has nothing to do with plaintiff allegedly notifying defendant of her pregnancy in mid-August 2010 or her morning sickness on the day of her termination. On approximately June 19, 2010, plaintiff was hired as a probationary employee with a three-month term of probation and was told that she would be reviewed at the end of her probationary period. (*See* Def.'s 56.1 ¶¶ 20, 27.)[6] It is undisputed that she was terminated approximately three months after her employment began, i.e., at the end of her probationary period when she was to be reviewed and a determination was to be made as to whether her employment with the company would continue. Accordingly, no rational jury could conclude that the timing of the discharge was suspicious when STAT Health planned to review plaintiff's performance and determine whether to offer her full employment in mid-September. "It is logical that an employer, having received several complaints about the performance of a probationary employee approaching the end of his probationary period of employment, would seek to terminate the

---

[6] In her submissions to the Court, and again at oral argument, plaintiff disputed that she was hired on approximately June 19, 2010. (*See, e.g.*, Baffa Aff. ¶ 2 (stating that she began her employment on June 16, 2013).) However, at her deposition, plaintiff admitted that she was hired on approximately June 19, 2010 and began training on approximately June 21, 2010. (Baffa Dep. at 41.) At oral argument, plaintiff's counsel attempted to use this inconsistency to demonstrate that plaintiff's probationary period had expired at the time of her termination and that she was no longer a probationary employee. However, plaintiff does not claim that she was given her end-of-probation review at any point prior to September 24, 2010, or that anyone ever told her that she was no longer a probationary employee. Therefore, the Court finds that it is undisputed that plaintiff was still a probationary employee at the time of her termination, even if she was not terminated until a few days after her three-month probationary period technically ended.

employee . . . ." *Smith v. Da Ros*, 777 F. Supp. 2d 340, 361 (D. Conn. 2011) (granting summary judgment to town on plaintiff's Section 1983 claim alleging that he was terminated for exercising his First Amendment rights and stating that "the logical and plausible explanation for the timing of Mr. Smith's discharge is that Mr. Smith's probationary period was nearing its end"); *see also Chavez v. City of Osceola*, 324 F. Supp. 2d 986, 995 (S.D. Iowa 2004) ("Poor performance by a probationary employee is an obvious basis for termination of employment . . . .").

The timing of the termination is not only explained by the end of plaintiff's probationary period, but also by two serious mistakes that plaintiff made in the days just prior to her termination. It is undisputed that Bennett, one of the medical billers, noticed two input errors on September 20 and September 23 that could have had serious consequences. (*See* Bennett Aff. ¶ 12 (stating that "[t]hese mistakes were particularly egregious").) The revelation of this misconduct after the employer allegedly learned of her pregnancy is also sufficient to negate any possible temporal proximity. *See Nolley v. Swiss Reinsurance Am. Corp.*, 857 F. Supp. 2d 441, 461 (S.D.N.Y. 2012) ("An intervening event between the protected activity and the adverse employment action may defeat the inference of causation where temporal proximity might otherwise suffice to raise the inference."), *aff'd* 12-1734-CV, 2013 WL 3214640 (2d Cir. June 27, 2013); *see also Vasconcellos v. Pier 1 Imports (U.S.), Inc.*, CA No. 06-484, 2008 WL 4601036, at *5 (D.R.I. Apr. 28, 2008) (Report and Recommendation) ("As to timing, Plaintiff is correct that the decision to terminate came shortly after she disclosed her pregnancy. However, Plaintiff neglects to appreciate that the decision came even closer in time to her untruthfulness." (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) ("[Plaintiff's] intervening unprotected conduct [insulting co-owner of business and "indulging in an angry outburst"] eroded any causal connection that was suggested by the temporal proximity of his protected conduct and his termination."))).

Accordingly, in light of this uncontroverted evidence negating the temporal proximity, the Court finds that no rational jury could conclude that the temporal proximity in this case supports an inference of discrimination. Instead, a rational jury would find that plaintiff was terminated in September 2010 because that was when defendant intended to review her status as a probationary employee and because plaintiff committed two serious errors in the days before her termination. In any event, even assuming *arguendo* that a rational jury believed that the temporal proximity supported an inference of gender discrimination, there is no other evidence in the record of discriminatory animus. As set forth below, defendant has articulated a non-discriminatory reason for the termination and has submitted uncontroverted evidence to support that reason, and plaintiff has no evidence from which a rational jury could find that such reason was a pretext for gender discrimination due to her pregnancy.

b. Reasons for Termination

Plaintiff argues that the reasons given for her discharge were pretext for discrimination because she did not commit the misconduct, i.e., she did not reveal confidential patient information, did not text on her phone, and did not commit nearly the number of mistakes defendant claims she did.

Plaintiff's arguments raise issue only as to the accuracy or the wisdom of defendant's decision to terminate her, but

fail to create a triable issue of fact as to whether the proffered reasons for plaintiff's termination were a pretext for discrimination. The question in any discrimination case is not whether defendant's decision to fire plaintiff was correct but whether it was discriminatory. *See, e.g.*, *McPherson v. N.Y.C. Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what '*motivated* the employer . . . .'" (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983))); *Koleskinow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009) ("Where a plaintiff has been terminated for misconduct, the question is not 'whether the employer reached a correct conclusion in attributing fault [to the plaintiff] . . . , but whether the employer made a good-faith business determination.'" (alteration in original) (quoting *Baur v. Rosenberg, Minc, Falkoff & Wolff*, No. 07 Civ. 8835, 2008 WL 5110976, at *5 (S.D.N.Y. Dec. 2, 2008))); *Agugliaro v. Brooks Bros., Inc.*, 927 F. Supp. 741, 747 (S.D.N.Y. 1996) ("Even assuming defendants were wrong in their belief that plaintiff had engaged in sexual misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender, or pension status.").

Plaintiff's counsel repeatedly insisted at oral argument that whether plaintiff committed this misconduct is a disputed issue of material fact. However, to reiterate, the relevant question is not whether plaintiff committed this misconduct, but whether the employer's proffered reasons for terminating plaintiff were pretext. It is undisputed that: (1) the end of plaintiff's probationary period coincided with plaintiff's termination; (2) nine employees of STAT Health (*excluding* supervisors Hamilton and Dougherty) submitted affidavits to this Court relating to plaintiff's poor job performance and stating that they, or other employees, complained to management about plaintiff; (3) Bennett, a medical biller, noticed two serious mistakes regarding data entry at the end of plaintiff's probationary period; (4) plaintiff's job performance was so poor that STAT Health decided to never train her regarding the discharge functions of the receptionist job; (5) Hamilton sent plaintiff home for using her phone in the kitchen during work hours; (6) plaintiff was reprimanded for not working diligently enough; and (7) plaintiff was reprimanded for discussing confidential patient information. Even construing all inferences in plaintiff's favor, no rational jury could conclude that defendant's actions were motivated by her pregnancy. It is apparent that any rational jury would conclude that defendant terminated plaintiff's employment because the employer and its employees honestly believed that plaintiff was a poor receptionist that committed serious mistakes. *See Riddick v. MAIC, Inc*., 445 F. App'x 686, 689 (4th Cir. 2011) (per curiam) (upholding grant of summary judgment to employer when plaintiff's thin evidence was "insufficient to overcome by a preponderance of evidence the uncontested affidavits of her subordinates that she was a difficult supervisor" and that it was "uncontroverted" that plaintiff had "performance issues" prior to her pregnancy); *Forde*, 546 F. Supp. 2d at 152 ("In light of the well-documented evidence of [] dissatisfaction with [plaintiff's] performance long before her announcement that she was pregnant, a trier of fact could not reasonably find from the timing and sequence of events that the reason for [plaintiff's] dismissal was pretextual."); *see also Brown v. Soc'y for Seaman's Children*, 194 F. Supp. 2d 182, 191 (E.D.N.Y. 2002)

("[A]lthough plaintiff felt she had been treated unfairly, . . . [t]here simply is no basis in the record from which a rational juror could find that the reasons given for plaintiff's termination . . . were false or a pretext for discrimination.").

Plaintiff has also not brought forward any evidence to suggest that discriminatory animus motivated defendant's decision in connection with her termination. *See Yu v. N.Y.C. Hous. Dev. Corp.*, 494 F. App'x 122, 125 (2d Cir. 2012) (summary order) (stating that to survive summary judgment, the Court must hold that a reasonable jury could find that the "proffered reasons for [the employer's action] were pretextual and that the real reason was discriminatory animus"). In response to the uncontroverted evidence discussed above, including the complaints from other employees and the medical biller about plaintiff's performance, plaintiff seeks to point to evidence of the events of the day of her termination (September 24, 2010) to show that a rational jury could draw an inference of gender discrimination. In particular, plaintiff argues that she was terminated on the same day that she had morning sickness and that supervisor Dougherty allegedly told plaintiff, at the time of termination, the following: "I don't think this is going to work out. Don't worry, you'll be having a baby soon. You have lots of things to look forward to. Enjoy bringing your baby in." (Baffa Aff. ¶ 20.)

The Court concludes that no rational jury could find pretext from the events of September 24, 2010, especially in light of the other uncontroverted evidence in the record and, thus, such events are insufficient to create a genuine issue of disputed fact that survives summary judgment. As a threshold matter, there is no evidence that Dougherty was aware of the morning sickness episode earlier that morning, including Hamilton allegedly yelling at plaintiff.[7] In any event, as noted *supra*, there is uncontroverted evidence in the record that explains the timing of the termination decision – namely, the end of the probationary period and the email from the medical biller complaining about plaintiff's errors. Moreover, the alleged comment by Dougherty is insufficient, by itself or in light of the entire record, to permit a rational jury to infer gender discrimination. First, the statement does not in any way, even construed most favorably to plaintiff, link the termination decision to any issues regarding plaintiff's pregnancy. This is not a case where there is any evidence that plaintiff's time away from work due to pregnancy or childbirth was an issue; to the contrary, it was plaintiff's time *at work* (namely, the evidence of numerous complaints about her performance) that was the issue. In other words, the comment does not even imply that plaintiff was being terminated because she needed to spend more time with her family or because there was a concern that her pregnancy and/or future motherhood would interfere with her ability to perform her job. Instead, the comment, even if made as plaintiff alleges, simply reflects Dougherty's attempt to avoid any disappointment from the termination by pointing to the positive impact that the birth

---

[7] The Court notes that, although plaintiff claims that Hamilton yelled at her when she sent her home, plaintiff does not assert that Hamilton made any comments regarding her gender or pregnancy; rather, Hamilton, after plaintiff had to excuse herself to go to the bathroom two or three times, allegedly made reference to the fact that plaintiff could not be throwing up in front of patients and needed to go home. Although Hamilton disputes plaintiff's version of the events, even assuming *arguendo* that such a comment were made by Hamilton and known to Dougherty, it does not create an issue of fact on whether Dougherty's decision to terminate plaintiff based upon complaints about her performance was a pretext for gender/pregnancy discrimination given the other, uncontroverted evidence regarding that decision, discussed herein.

13

of the child will have in plaintiff's life. It is completely unconnected, even in plaintiff's version, to any comment about her performance or the reason for termination. Thus, the Court believes that the comment has little or no probative value as it relates to the critical issue – that is, whether the termination decision was a pretext for gender discrimination. *See Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007) (noting that "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be"); *see also Riordan v. BJ's Wholesale Club, Inc.*, No. 08-CV-1229, 2011 WL 124500, at *11 (N.D.N.Y. Jan. 14, 2011) (granting summary judgment to employer in age-discrimination case and stating that supervisor's comment urging plaintiff to "go to Florida" was "innocuous" and "[n]othing about the comment, or the context in which it was delivered, suggests discriminatory intent"); *Cozzi v. Great Neck Union Free Sch. Dist.*, No. 05-CV-1389, 2009 WL 2602462, at *17 (E.D.N.Y. Aug. 21, 2009) (analyzing remarks in age-discrimination case – such as "don't you want to spend more time with your grandchildren?" – and noting that "the Court doubts whether [the supervisor's] remarks are indicative of animus of any sort"); *Infante v. Ambac Fin. Grp.*, No. 03-CV-8880, 2006 WL 44172, at *7 (S.D.N.Y. Jan. 5, 2006) (concluding that interview questions and statements, including question about how being a mother "fit into the mix," were "innocuous and do not suggest that anyone at [defendant company] was discriminating against her either on the basis of her recent pregnancy or on the basis of any assumptions about how women with children structure their lives"). In any event, even assuming *arguendo* that some discriminatory intent could be inferred from this innocuous comment, it is insufficient to allow a rational jury in this case to find the articulated, non-discriminatory reason for the termination was a pretext for gender discrimination. The Second Circuit has made clear that stray remarks, even if made by a decisionmaker, "*without more*, cannot get a discrimination suit to a jury." *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (citing *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-10 (2d Cir. 1994)), *abrogated on other grounds by Reeves*, 530 U.S. at 147-48. Here, plaintiff has nothing more and, as discussed in detail *supra*, even construing this evidence most favorably to plaintiff, no rational jury could find the decision was a pretext for gender/pregnancy discrimination in light of the other uncontroverted evidence in the record, including, *inter alia*, the complaints about plaintiff's performance and the fact that the eventual replacement was pregnant at the time she was hired.

There is also no evidence of general pregnancy related comments or negative actions towards other pregnant women, or any other evidence that could remotely support an inference of gender or pregnancy discrimination. (*See* Baffa Dep. at 50-51 (plaintiff admitting that no employees at STAT Health made any "demeaning comments in general about pregnant women" or "negative" comments about pregnant women).) To the contrary, the uncontroverted evidence demonstrates that defendant treats pregnant employees and employees with new children in their life extremely favorably. As stated *supra*, it is undisputed that: (1) defendant employed in 2010 two pregnant employees and neither was terminated or treated adversely; (2) both employees received as much maternity leave as requested; (3) one of those employees has been pregnant three times while an employee at STAT Health; and (4) defendant permitted two grandmothers in 2010 to take leave to help care for their

grandchildren. This Court recognizes that "an employer may not escape liability for discriminating against a given employee . . . *simply because* it can prove it treated other members of the employee's group favorably," *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000) (emphasis added). However, the Court is not relying on this uncontroverted evidence alone; in fact, the Court's ruling would be the same in the absence of this evidence based upon the uncontroverted evidence of complaints about plaintiff's performance by other employees and the absence of any evidence proffered by plaintiff that defendant harbored a discriminatory animus towards her because of her pregnancy or towards any other pregnant employee. In fact, perhaps the most compelling evidence of the absence of any such motive is the undisputed evidence that plaintiff's eventual replacement was pregnant at the time of her hiring. Notably, plaintiff was unable to provide any explanation as to why, if defendant was discriminating against her because she was pregnant, defendant would ultimately hire a pregnant woman to replace her. *See Pickworth v. Entrepreneurs' Org.*, 261 F. App'x 491, 493 (4th Cir. 2008) (per curiam) (upholding grant of summary judgment in employer's favor and holding that plaintiff failed to establish a *prima facie* showing of pregnancy discrimination when plaintiff not only "failed to establish that she was performing at an acceptable level at the time she was terminated," but also when plaintiff's "replacement was pregnant at the time she was promoted to [plaintiff's] former position").

In sum, considering the evidence as a whole, and viewing all of the evidence in the light most favorable to plaintiff, no reasonable jury could find that plaintiff's pregnancy was a motivating factor in her termination. Although plaintiff has offered several arguments to defeat summary judgment, "their combined weight is negligible, and no disputed material issues of fact remain." *Pisana v. Merrill Lynch & Co.*, No. 93 Civ. 4541, 1995 WL 438715 at *9 (S.D.N.Y. July 24, 1995). Plaintiff has put forth no evidence, other than her pregnancy and superficial temporal proximity, from which discrimination could be inferred. Those bare facts are countered by the undisputed, overwhelming evidence weighing against plaintiff's allegations – namely, that plaintiff engaged, or at the very least defendant believed she engaged, in multiple acts of misconduct and unsatisfactory performance, and that defendant continued to hire and retain pregnant employees following plaintiff's termination. Thus, in light of the absence of evidence in support of plaintiff's claims, and the overwhelming evidence weighing against an inference of discriminatory intent, no rational jury could find that plaintiff was fired because of her pregnancy. Indeed, the only reasonable conclusion is that plaintiff was fired based on her misconduct and poor performance. Even if defendant was mistaken and plaintiff was a satisfactory employee that did not commit misconduct, that would only raise a question of fact in this case as to whether plaintiff was fired unfairly, not whether she was the subject of discrimination. *See Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984) (stating that an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"); *see also Norton*, 145 F.3d at 120; *Lambert v. McCann Erickson*, 543 F. Supp. 2d 265, 280 (S.D.N.Y. 2008).

\*   \*   \*

The Court recognizes that it must proceed with great caution in granting summary judgment in discrimination cases

where intent, as drawn from inferences, is a core issue. However, as the Second Circuit has noted, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). That is precisely the situation here. Plaintiff relies on pure speculation and has not produced sufficient evidence to support a rational finding that, more likely than not, plaintiff's pregnancy was a motivating factor for her termination. Accordingly, the Court finds that plaintiff has failed to raise a genuine question of fact as to her Title VII claim and grants defendant's motion for summary judgment on that claim.

C. New York State Claim

Plaintiff's complaint also asserts a cause of action under New York State law. Having determined that the federal claim does not survive summary judgment, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiff's state law claim because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608, 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claim given the absence of any federal claims that survive summary judgment and dismisses plaintiff's state law claim without prejudice.

## IV. Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment in its entirety with respect to the federal claim. The Court declines to exercise supplemental jurisdiction over the state law claim, and dismisses the state law claim without prejudice. The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 17, 2013
   Central Islip, NY

\* \* \*

Plaintiff is represented by Peter Arcadio Romero and Edward Lee Sample, II, Frank & Associates P.C., 500 Bi-County Blvd, Farmingdale, New York 11735. The attorney for defendant is Sharon P. Stiller, Abrams, Fensterman, 500 Linden Oaks, Suite 110, Rochester, New York 14625.